## A93A1695. DOWLING v. LOPEZ.
(440 SE2d 205)

McMURRAY, Presiding Judge.

On April 24, 1988, Carla Kiser ("the decedent") died of metastatic carcinoma and was survived by her two-year-old child, Brandis Swails. On February 6, 1989, Viola Dowling (plaintiff) was appointed executrix of the decedent's estate and on January 4, 1991, she filed a medical malpractice action on behalf of the estate and as next friend of Brandis Swails, alleging the decedent endured unnecessary pain and suffering and died prematurely as a result of misdiagnosis by the decedent's physician, Frank Lopez (defendant). Defendant denied the material allegations of the complaint and moved for summary judgment, arguing that the estate's survival action is barred by the two-year statute of limitation and that the minor child's wrongful death claim cannot stand because any failure in diagnosing the decedent's cancer was not the proximate cause of her death.

The undisputed evidence reveals that defendant is a physician specializing in diseases of the stomach and intestines; that defendant began treating the decedent on November 19, 1987, for severe abdominal pain and that defendant concluded the decedent had "ileocolitis" or Crohn's disease, an inflammation of the bowels. It is also undisputed that the decedent was under defendant's care until February 7, 1988; that defendant noted "a sausage-shaped . . ." mass in the decedent's lower abdomen during physical examinations on December 4, 11, 15, 21 and 28, 1987, and that the decedent was hospitalized on three separate occasions while under defendant's care for physical complications he attributed to Crohn's disease.

On February 22, 1988, a team of surgeons discovered that the decedent had terminal cancer which originated in her bowels. The decedent died on April 24, 1988.

This appeal followed an order granting defendant's motion for summary judgment. *Held*:

1. Plaintiff contends the trial court erred in granting summary

judgment as to the estate's survival action, arguing the two-year statute of limitation prescribed in OCGA § 9-3-71 (a) tolled pursuant to OCGA § 9-3-90 because the decedent was mentally incapacitated after the alleged malpractice. Plaintiff apparently reasons the decedent did not regain capacity until plaintiff's appointment as executrix of the estate on February 6, 1989, and, as a consequence filing of the survival action on January 4, 1991, preceded expiration of the statute of limitation on February 6, 1991. This contention is without merit.

Assuming, without deciding, the decedent was mentally incapacitated after the alleged malpractice, the tolling provision of OCGA § 9-3-90 during periods of legal incapacity does not apply in actions for medical malpractice. OCGA § 9-3-73 (b); *Kumar v. Hall*, 262 Ga. 639, 640 (1) (423 SE2d 653). Further, assuming the statute of limitation began upon discovery of the alleged misdiagnosis by defendant on February 22, 1988, see *Bryant v. Crider*, 209 Ga. App. 623 (3) (434 SE2d 161), the statute of limitation as to the survival action expired on December 6, 1990, two years after the alleged medical malpractice plus 288 days allowed by tolling of the statute of limitation between the decedent's death on April 24, 1988, and appointment of the executrix of the decedent's estate on February 6, 1989. OCGA § 9-3-92. Notwithstanding, plaintiff argues that OCGA § 53-7-92 tolled the statute of limitation for an additional six months after her appointment as executrix of the decedent's estate, thus extending the time for filing the survival action beyond January 4, 1991. This argument is without merit. OCGA § 53-7-92 does not toll the statute of limitation for survival actions accruing at or before the decedent's death. This Code section tolls the statute of limitation for the commencement of actions against the estate within six months after appointment of an administrator of the estate. *Deller v. Smith*, 250 Ga. 157, 158 (1b), 160, 162 (296 SE2d 49); *Cannon v. Tant*, 229 Ga. 771, 772 (1) (195 SE2d 15).

2. Next, plaintiff contends the trial court erred in granting summary judgment as to the surviving child's wrongful death claim, arguing that genuine issues of material fact remain regarding the proximate cause of the decedent's death.

Georgia's wrongful death statutes give a right of action not available at common law and must be limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms. *Miles v. Ashland Chem. Co.*, 261 Ga. 726, 728 (410 SE2d 290). OCGA § 51-4-2 (a) provides that a child may recover the full value of a parent's life where there is evidence that the parent's death was a homicide, i.e., the result of the wrongful act, default or negligence of another. OCGA § 51-4-1 (2). Neither this Code subsection, nor any other provision in Georgia's wrongful death statutes provides for recovery where a defendant's wrongful act or negligence did not result

in death. Nonetheless, the dissent suggests that genuine issues of material fact remain as to the wrongful death action because there is evidence that the decedent's life could have been prolonged (rather than saved) had it not been for defendant's alleged malpractice. This view fails to recognize the fundamental distinction between statutorily prescribed wrongful death claims and claims associated with loss of chance of survival, e.g., pain and suffering, loss of consortium, loss of enjoyment of life. See Martin J. McMahon, Annot., Medical Malpractice: Measure and Elements of Damages in Actions Based on Loss of Chance, 81 ALR4th 485. While the loss and damages suggested by the dissent may be available in a cause of action outside Georgia's wrongful death statutes, OCGA § 51-4-2 (a) simply does not provide for recovery for loss of chance of extended survival. In fact, this Code subsection only provides damages for the full value of the decedent's life. (It does not provide for recovery for whatever remains of a decedent's life because of misdiagnosis in a case of terminal illness.) See Michael P. Sullivan, Annot., Recovery in Death Action for Failure to Diagnose Incurable Disease Which Caused Death, 64 ALR4th 1232.

It thus follows that negligence alone is insufficient to sustain recovery for wrongful death in a medical malpractice action. It must be proven that the death of a patient " ' "proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient." *Maddox v. Houston County Hospital Auth.*, 158 Ga. App. 283, 284 (279 SE2d 732) (1981).' *Hawkins v. Greenberg*, 166 Ga. App. 574, 575 (1a) (304 SE2d 922)." *Goggin v. Goldman*, 209 Ga. App. 251, 253 (433 SE2d 85). Further, there can be no recovery in a wrongful death action based on medical negligence where there is no showing to any reasonable degree of medical certainty that the patient's death could have been avoided. See *Goggin v. Goldman*, 209 Ga. App. 251, 252, supra; *Parrott v. Chatham County Hosp. Auth.* 145 Ga. App. 113, 115 (243 SE2d 269).

In the case sub judice, Emmett L. Dupree, Jr., one of the surgeons who discovered the decedent's cancer, concluded that the decedent never had Crohn's disease; that defendant failed to exercise the requisite degree of skill in diagnosing the decedent and that defendant's improper diagnosis caused the decedent unnecessary pain and suffering and resulted in premature death.[1] Dr. Dupree further testified that he had treated patients with symptoms similar to those presented by the decedent in November 1987 and that he had successfully extended their lives "for six or seven or eight years [and] sometimes . . . a lot longer." However, neither Dr. Dupree nor any

---

[1] Dr. Dupree based his opinion on his observations during surgery and upon an examination of medical records acquired during treatment of the decedent since November 1987.

other physician deposed by the parties was able to testify with any degree of medical certainty that the decedent did not have terminal cancer when defendant treated her in November 1987. In fact, while there is evidence that the decedent's cancer may have been curable if it had been detected before metastasis, there is no proof that the decedent did not have terminal cancer when defendant first treated the decedent. On the contrary, Robert Carter Davis, Jr., a gastroenterologist experienced in detecting inflammatory bowel disease, testified that the decedent "at the time of presentation, in all likelihood, [had] a terminal cancer that presented with all the symptoms of Crohn's disease."

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In the case sub judice, there is no evidence that defendant's misdiagnosis of the decedent's cancer was the proximate cause of the decedent's death so as to authorize damages for the full value of the decedent's life pursuant to OCGA § 51-4-2 (a). Consequently, the trial court did not err in granting summary judgment as to the wrongful death claim filed on behalf of the decedent's minor child.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Cooper, Andrews, Johnson and Smith, JJ., concur. Beasley, P. J., concurs specially. Blackburn, J., concurs in part and dissents in part.*

BEASLEY, Presiding Judge, concurring specially.

I concur in the majority opinion. With respect to the dissent, although Dr. Davis testified in deposition that the decedent had "at the time of presentation (to defendant in 1987), in all likelihood, a terminal cancer that presented with all the symptoms of Crohn's disease," he explained his use of the term "in all likelihood" when asked. He said it was a slang term and made clear that "[his] professional opinion is that she had terminal cancer at that time and was not salvageable." His opinion was that she was at "Stage D . . . it would have already had to be metastatic at the time. . . ." It was his opinion that defendant acted with good intent "and did what was an appropriate

evaluation." From this, a jury could not reasonably infer that the decedent's cancer was treatable to such a degree that her life could have been extended.

With respect to Dr. Dupree, a surgeon (defendant is a gastroenterologist), he stated by affidavit that had defendant exercised the requisite care in 1987, the decedent's cancer would have been diagnosed earlier and that her life "could have, in all likelihood, been prolonged and her pain and suffering eased." In deposition he testified that surgery should have been done when fluid was found in the cul-de-sac, to find out what was going on in her abdomen. He said he had other surgery patients who lived six or seven or eight years "if you get to it in time."

However, when asked if the decedent's life would have been prolonged had surgery been done when the fluid was discovered, he testified: "Well, it's kind of difficult to say about that. It probably would have been prolonged because, I mean, I have operated on patients before." He described a woman on whom he operated who thereafter took chemotherapy treatment and lived about eight years. This is the extent of the "likelihood."

In my opinion, even if there is in Georgia, either within or outside the wrongful death statutory claim, one for loss of a longer life or for one with less pain and suffering, the evidence falls short of supporting it.

BLACKBURN, Judge, concurring in part and dissenting in part.

I concur with Division 1 of the majority opinion, regarding the application of the statute of limitation to the estate's survival action. However, with regard to the wrongful death action, I believe that jury questions exist as to whether the defendant physician was negligent and whether that negligence constituted the proximate cause of the decedent's death. For that reason, I dissent from Division 2.

As noted by the majority opinion, in order to recover for a wrongful death in a medical malpractice action, the plaintiff must show negligence which constituted the proximate cause of the death. See *Goggin v. Goldman*, 209 Ga. App. 251 (433 SE2d 85) (1993). Contrary to the majority's conclusion, the evidence in this regard was conflicting.

The plaintiff's expert witness, Dr. Emmett Dupree, Jr., testified that in his opinion, the defendant physician misdiagnosed the decedent's ailment as Crohn's disease in November 1987, and failed to arrange the proper diagnostic procedures to rule in or out that disease at that time. Had the defendant done so in November 1987, Dr. Dupree felt that *in all likelihood*, surgery and other cancer treatment would have prolonged the decedent's life by six to eight years. He recounted how such timely treatment of other patients who presented

symptoms similar to those complained of by the decedent in November 1987 had prolonged those patients' lives by that range of years. Dr. Dupree's opinion was based upon his review of the medical records and his personal familiarity with the decedent's case gained from his participation in the exploratory surgery on the decedent in February 1988 that revealed the terminal cancer.

The defendant's expert witness, Dr. Robert Carter Davis, Jr., based his opinion solely upon his review of the medical records of the decedent's treatment. He concluded that in November 1987, *in all likelihood*, the decedent's cancer had already reached an *incurable* stage. However, Dr. Davis did not state that the decedent's condition was *untreatable*, or that appropriate treatment would not have extended her life. Even one who has an incurable illness is entitled to receive an appropriate diagnosis and treatment for the condition, where it is shown that such treatment could reasonably extend the life of such person.

Dr. Dupree's opinion established jury questions in the wrongful death action, on the dispositive issues of negligence and proximate cause of the death of the decedent at the time of her demise. Cf. *Richmond County Hosp. Auth. &c. v. Dickerson*, 182 Ga. App. 601 (1) (356 SE2d 548) (1987). Although it may be true that the decedent ultimately would have died of cancer, the evidence is sufficient to raise a jury question as to whether the defendant's negligence deprived her of additional years of life and resulted in her *untimely* death from cancer. Where it can be shown that the defendant's negligence was the proximate cause of the decedent's death, a wrongful death cause of action results, even if the decedent was destined to succumb to the disease at some point in the future. The existence of the terminal condition would be a factor in calculating damages, but it would not preclude a wrongful death action. A jury would be authorized to conclude that because of the defendant's negligence, the decedent would not have died when she did, and that the plaintiff is entitled to recover appropriate damages.

Accordingly, for the foregoing reasons, I would reverse the trial court's grant of summary judgment for the defendant on the wrongful death claim.

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 20, 1993 —

*Sutton & Associates, Berrien L. Sutton, Hallman & Associates, Ronald W. Hallman*, for appellant.

*Tillman, McTier, Coleman, Talley, Newbern & Kurrie, Wade H.*

*Coleman, Edward F. Preston,* for appellee.