A98A1759. ESTATE OF RODDY LEE PATTERSON et al.
v. FULTON-DeKALB HOSPITAL AUTHORITY.
(505 SE2d 232)

ELDRIDGE, Judge.

The estate of Roddy Lee Patterson appeals the Fulton County Superior Court's grant of summary judgment to the defendant-appellee Fulton-DeKalb Hospital Authority ("Hospital Authority") in this medical malpractice action. We affirm.

The evidence shows that, on June 30, 1994, decedent Patterson presented himself to Grady Memorial Hospital, which is operated by the Hospital Authority. Patterson was 46 years old and complained of weakness on his left side; he reported that he had suffered a blow to his head two weeks earlier. Patterson's health history indicated that he had been taking aspirin for pain, was a long-term smoker, and had a history of heavy alcohol consumption. The neurology attending physician directed a resident physician to administer Heparin, a blood-thinning agent. Later the same day, Patterson developed an intracerebral hemorrhage and died.

Patterson's estate and the legal guardian of his two minor children ("the Pattersons") filed suit against the hospital on June 20, 1996, alleging that the administration of Heparin deviated from a minimal standard of care and caused Patterson's death. Attached to the complaint was an affidavit from Richard D. Franco, M. D., a neurologist, who stated that he had reviewed Patterson's medical file; such files were not attached to the affidavit and are not included in the record. However, based solely upon his review of the medical files, Dr. Franco concluded that the use of Heparin "may have contributed" to Patterson's death.

The Hospital Authority moved for summary judgment on June 10, 1997, asserting that the Pattersons had failed to present evidence

that any alleged negligence on the part of the Hospital Authority or its agents was the proximate cause of the decedent's death. The Hospital Authority attached to its motion an affidavit from the attending physician which affirmatively stated that the administration of Heparin was consistent with the standard of care ordinarily exercised by physicians under similar conditions and, further, that such administration did not proximately cause or contribute to Patterson's death. Finally, the Hospital Authority also claimed that Dr. Franco's affidavit was without probative value on a motion for summary judgment, as the medical records upon which his conclusions were based were not attached to the affidavit, as required by OCGA § 9-11-56 (e).

In response, the Pattersons relied upon their pleadings and Dr. Franco's affidavit and did not submit any additional evidence for consideration. On January 15, 1998, the trial court granted summary judgment to the Hospital Authority, finding that the Pattersons had failed to establish the required element of causation. This appeal followed. *Held*:

1. In the first enumeration of error, the Pattersons assert that the trial court erred in failing to consider Dr. Franco's affidavit when ruling upon the summary judgment motion. This enumeration lacks merit. As shown in Division 2, infra, it is clear from the order that the trial court did, in fact, consider the affidavit in reaching its conclusion that the Pattersons had failed to establish causation. Accordingly, there was no error.

However, this Court notes that the medical records upon which Dr. Franco reached his conclusions were not attached to his affidavit or included in the record. Therefore, even though the affidavit may have been sufficient for pleading purposes under OCGA § 9-11-9.1 (a), the affidavit was insufficient under OCGA § 9-11-56 (e) to meet the evidentiary standards on a motion for summary judgment and, as a matter of law, lacked any probative value. See *Goring v. Martinez*, 224 Ga. App. 137, 139 (2) (b) (ii) (479 SE2d 432) (1996); *Vitner v. Miller*, 223 Ga. App. 692, 693 (2) (479 SE2d 1) (1996); *Williams v. Hajosy*, 210 Ga. App. 637, 638 (1), (2) (436 SE2d 716) (1993).

2. In the remaining enumerations of error, the Pattersons assert that the trial court misinterpreted this Court's holding in *Abdul-Majeed v. Emory Univ. Hosp.*, 225 Ga. App. 608 (484 SE2d 257) (1997) ("*Abdul-Majeed*"), and, thus, misapplied the standard for demonstrating causation in this case. We disagree with both assertions.

"In order for a plaintiff to recover for malpractice, there must be sufficient evidence that the physician's alleged failure to use the requisite degree of skill and diligence in treatment either proximately caused or contributed to plaintiff's injury. [Cit.]" *McClure v. Clayton County Hosp. Auth.*, 176 Ga. App. 414, 417 (3) (336 SE2d 268) (1985); *Jobson v. Dooley*, 164 Ga. App. 440, 442 (296 SE2d 388) (1982).

The standard of proof in a civil case, even a medical malpractice action, is by a preponderance of the evidence. OCGA §§ 24-1-1; 24-4-3; *Life Ins. Co. of Ga. v. Lawler*, 211 Ga. 246, 251 (1) (85 SE2d 1) (1954); *Supreme Conclave Knights of Damon v. Woods*, 120 Ga. 328 (47 SE 940) (1904). Preponderance of evidence means "that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." OCGA § 24-1-1 (5); *Patillo v. Thompson*, 106 Ga. App. 808 (128 SE2d 656) (1962); *Masonic Relief Assn. v. Hicks*, 47 Ga. App. 499 (171 SE 215) (1933).

Thus, "reasonable medical probability" has no greater meaning than a preponderance of the evidence, and the standard of proof is preponderance of the evidence as to medical causation. "Moreover, we note that although we have frequently used the phrase 'reasonable medical certainty,' [cit.], it is neither magic nor particularly helpful. [Cit.] What courts and juries need from medical experts is not a simple recitation of these words, but a realistic assessment of the likelihood that the alleged negligence caused the injury or death." *Abdul-Majeed*, supra at 609. See also *Ga. Cas. &c. Co. v. Jernigan*, 166 Ga. App. 872, 877-878 (5) (305 SE2d 611) (1983).

"The above medical evidence is sufficient to establish the *possibility* of a causal relation, even if it falls short of showing *probability*. The cases requiring affirmative medical evidence of *probability*, [cits.], are distinguishable in that they involved issues of causation which, by the nature of the situation, could be resolved solely by expert medical evidence standing alone, in which cases the evidence must naturally be based at least on reasonable probability. 'It appears to be well settled that medical testimony as to the *possibility* of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, *standing alone*, to establish such relation.' 135 ALR 517. (Emphasis supplied.) The medical testimony in the present case is not standing alone, however, but is supplemented by other, non-expert evidence. 'There are a number of cases which, while apparently admitting that medical evidence showing only a possibility of causal relation between an accident or injury and subsequent death or physical or mental impairment is not, by itself, sufficient to establish such relation, uphold the view that such evidence, in conjunction with other evidence, non-expert in nature, indicating that such a relation exists, although likewise not sufficient by itself to establish the relation, or in conjunction with admitted or obvious facts and circumstances of the case showing that death or physical disability would naturally and probably result from the injury, is sufficient to establish the causal relation.' 135 ALR 516, 532. See also 2

ALR3d 384, 387." *Nat. Dairy &c. Corp. v. Durham*, 115 Ga. App. 420, 422-423 (154 SE2d 752) (1967). Accord *Kent v. Peters*, 211 Ga. App. 698, 699 (3) (440 SE2d 87) (1994); *Jacobs v. Pilgrim*, 186 Ga. App. 260, 262 (1) (367 SE2d 49) (1988); *Maurer v. Chyatte*, 173 Ga. App. 343, 344-345 (3) (326 SE2d 543) (1985); *Ga. Cas. &c. Co. v. Jernigan*, supra.

There is an often cited quotation " 'that a physician may have been negligent is not sufficient to render him liable, and the complaining patient must prove that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient.' 61 AmJur2d 348, Physicians, Surgeons, and Other Healers, § 210 and cits." *Parrott v. Chatham County Hosp. Auth.*, 145 Ga. App. 113, 115 (243 SE2d 269) (1978). However, such quote involved cases where there was neither medical expert testimony regarding causation, medical evidence pointing to causation, or other non-medical evidence from which, alone or in combination, causation could be inferred; the only evidence was the occurrence. Id.; accord *Maddox v. Houston County Hosp. Auth.*, 158 Ga. App. 283, 284 (279 SE2d 732) (1981). Such quote, as dicta, was cited as the general law applicable to medical malpractice actions but had no application to the holding of the case where the verdict for the plaintiff was upheld based on the expert testimony of the plaintiff's expert witness that the fatal result was "most likely" due to a specified drug prescribed by the defendant. *Hawkins v. Greenberg*, 166 Ga. App. 574, 575 (1) (304 SE2d 922) (1983); accord *Lee v. Satilla Health Svcs.*, 220 Ga. App. 885, 887-888 (2) (470 SE2d 461) (1996) (where the plaintiff also had expert testimony as to causation); *Goggin v. Goldman*, 209 Ga. App. 251, 252-253 (433 SE2d 85) (1993). Such quotation has also been used when there is an expert witness, but the evidence is "totally devoid of any causal connection between the [alleged negligent act] and the alleged injury suffered by plaintiff. [Cits.]" *McClure v. Clayton County Hosp. Auth.*, supra at 419 (4). When the expert testimony, alone and unsupported by other evidence, indicates that the causal connection is something less than reasonable medical probability, such quotation has also been used. See *Grantham v. Amin*, 221 Ga. App. 458, 459 (471 SE2d 525) (1996); *Dowling v. Lopez*, 211 Ga. App. 578, 579-580 (2) (440 SE2d 205) (1993).

Where, as here, the defendant hospital makes a motion for summary judgment and the attending physician gives a medical affidavit that states a medical opinion that the alleged deviation from the standard of care has no causal connection with the injury or aggravated a pre-existing condition, such motion has pierced the plaintiff's pleadings, refuted causation, and shifted the burden to the plaintiff of coming forward with some evidence to create a material issue of fact, because the defendant hospital has disproved the essential ele-

ment of causation. OCGA § 9-11-56 (e). When causation is involved, plaintiff has a more complex dilemma where the defendant has given expert testimony that there was no proximate cause, because to merely show a causal link does not refute the defendant's denial of causation and leaves an examination upon the entire record that the evidence does not create a triable issue as to the essential elements of causation, requiring the grant of summary judgment. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); see also *Abdul-Majeed*, supra at 608; *Grantham v. Amin*, supra at 459. Thus, the plaintiff must present medical expert opinion as to causation which may be aided by other medical or non-medical evidence that, in totality, shows causation, even though the medical opinion is weak, i.e., showing a reasonable possibility rather than a probability.

In this case, the trial court found that Dr. Franco's assertion that the alleged negligence "may have contributed" to the decedent's injury and subsequent death was legally insufficient to establish causation that the probability was such that negligence was the proximate cause of injury or death, i.e., by a preponderance of evidence or "a realistic assessment of the likelihood that the alleged negligence caused injury or death" from all the evidence. *Abdul-Majeed*, supra at 609. There was no error as to this conclusion of law under the facts and circumstances of this case.

Further, the Pattersons failed to present any other evidence of causation to support their medical expert's opinion as to causation. See *Nat. Dairy &c. Corp. v. Durham*, supra at 422-423. When presented with the attending physician's affidavit, the Pattersons could not rest on their pleadings, but had to come forward with competent expert counter-evidence, medical records, or other non-medical evidence that together created a genuine issue of fact as to causation to rebut the Hospital Authority's affidavit as to the absence of causation. OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, supra; *Williams v. Hajosy*, supra at 638 (2); *Savannah Valley &c. Assn. v. Cheek*, 248 Ga. 745, 746 (285 SE2d 689) (1982). As no such evidence was presented, the Hospital Authority was entitled to summary judgment.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JULY 30, 1998.

*Debra A. Rickles*, for appellants.
*Alston & Bird, Clifton M. Iler, Bernard Taylor*, for appellee.